**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 13-cv-1672-WJM-KLM

ANDREA SMITH,

      Plaintiff,

v.

T.W. CLYDE, O.D., P.C., d/b/a PIKES PEAK EYE CARE,

      Defendant.

---

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Andrea Smith ("Plaintiff") brings this action against her former employer, Tom W. Clyde, O.D., P.C., doing business as Pikes Peak Eye Care ("Defendant" or "Dr. Clyde"), for discrimination based on sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").  (ECF No. 1.)  Before the Court is Defendant's Motion for Summary Judgment ("Motion").  (ECF No. 27.)  For the reasons set forth below, the Motion is denied.

## I.  STANDARD OF REVIEW

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49

(1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal

Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

The Court must resolve factual ambiguities against the moving party, thus favoring the

right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTUAL BACKGROUND

The following relevant facts are viewed in the light most favorable to the Plaintiff,

and are undisputed except where noted.

Defendant operates an optometry practice in Colorado Springs, Colorado, under

the name Pikes Peak Eye Care.  (Deposition of Tom W. Clyde ("Clyde Dep.") (ECF

Nos. 27-1, 27-2, 35-2) p. 7.)  Plaintiff was hired on July 14, 2004 to work in the optical

department under the supervision of Mark Winn.  (Deposition of Andrea Smith ("Pl.'s

Dep.") (ECF Nos. 27-4, 35-1) p. 7.)

On July 20, 2010, a notice was posted at Dr. Clyde's office for Pikes Peak Eye

Care employees that prohibited, among other things, "internet use that does not pertain

to work".  (ECF No. 27-5; Clyde Dep. pp. 38-39.)  Dr. Clyde testified that Plaintiff "was

the main reason" that the notice was drafted, but Plaintiff states that she was never

informed of this or personally given any warnings or reprimands with respect to her

internet use.  (Pl.'s Dep. pp. 18-19.)  In early 2012, filters limiting access to the internet

were installed on most of the computers in the office, but the computer in the business office remained capable of full internet access.  (*Id.* pp. 16-17.)

On June 4, 2012, according to Plaintiff, Dr. Clyde met with her in his office and informed her that when Mark Winn retired at the end of the month, Dr. Clyde was planning to put Plaintiff "in charge of the optical department," on equal footing with a new employee he planned to hire who would be a certified optician.  (Pl.'s Dep. pp. 30-32.)  Dr. Clyde disputes that such a meeting occurred and that Plaintiff was ever promoted.  (Clyde Dep. pp. 78-79.)

At some point in late June or early July 2012, Plaintiff informed Dr. Clyde that she was pregnant.  (*See* Pl.'s Dep. p. 37.)  Plaintiff testified that when she informed Dr. Clyde that she was pregnant, he was upset and said angrily, "Don't you know what causes that shit?"  (*Id.* pp. 60, 71.)  Dr. Clyde testified that he did not react when told about Plaintiff's pregnancy, and later made a joke to the effect of "Don't you know how you got pregnant?".  (Clyde Dep. p. 87.)

On August 8, 2012, according to Plaintiff, Dr. Clyde met with Plaintiff privately and informed her that it was unfortunate that she had become pregnant, but that because he needed someone to be in charge of the optical department, he was planning to hire Jim Willis to take over instead.  (Pl.'s Dep. pp. 41-42, 69.)  Dr. Clyde disputes that this meeting occurred and that Plaintiff was ever demoted.  (Clyde Dep. pp. 78-79.)

Later that same day, an office meeting was held at a local restaurant at which Dr. Clyde and Plaintiff were both in attendance.  (*Id.* at 84-85.)  According to Plaintiff, during the meeting, Dr. Clyde mentioned to the group that he was hiring Jim Willis to be

in charge of the optical department, and "it was too bad that [Plaintiff] had to go and get pregnant." (Pl.'s Dep. p. 42.) Dr. Clyde asserts that he merely made a bad joke about Plaintiff's pregnancy. (Clyde Dep. p. 87.)

Plaintiff also testified that she heard Dr. Clyde make multiple statements to Mark Winn not to hire women with "viable eggs", but only older women with "dead eggs". (Pl.'s Dep. pp. 71-72.) Mark Winn confirmed that Dr. Clyde made statements a few times "in a joking manner", as well as in business meetings, to the effect of "Don't hire women with viable eggs." (Deposition of Mark Winn ("Winn Dep.") (ECF No. 35-3) pp. 45-46.) When Dr. Clyde was asked if he ever made statements about hiring women with viable eggs, he testified, "I think I did because I've been told I did." (Clyde Dep. p. 90.) Dr. Clyde stated that he intended any such comments to refer to his preference for older workers with a "better work ethic". (*Id.* pp. 90-92.) Dr. Clyde disputes that any disparaging or discriminatory comments were made. (ECF Nos. 27 at 7-8; 36 at 5-7.)

In mid-August, 2012, Dr. Clyde found Plaintiff using the business office computer for personal internet use. (Pl.'s Dep. pp. 16, 23-24.) When Dr. Clyde asked Plaintiff what she was doing on the internet during business hours, Plaintiff stated that she was clocked out for lunch. (*Id.* 20-21.) Plaintiff testified that she "honestly thought" she was clocked out at the time, but office records confirmed that she had not clocked out for lunch at all on that day. (*Id.* pp. 23-24, 46.) Plaintiff admits that she occasionally forgot to clock out, but Dr. Clyde disputes that this was merely occasional, presenting testimony from another employee that Plaintiff failed to clock out as often as three or four times per week. (*Id.* p. 22; ECF No. 27-20.)

According to Dr. Clyde, on August 27, 2012, he was informed by Jim Willis, the new supervisor of the optical department, that on a previous work day when Plaintiff had failed to clock out, she was observed leaving at 2:00 p.m. but told the business manager that she had left at 5:00 p.m.  (Clyde Dep. p. 95.)  Plaintiff testified that she did not recall this occurrence, was never told or confronted about it, and reported her hours to the business manager as accurately as possible on the occasions when she forgot to clock in or out.  (Pl.'s Dep. pp. 21-22, 66.)

On August 28, 2012, Dr. Clyde terminated Plaintiff's employment.  (Clyde Dep. p. 93.)  Dr. Clyde admits that he angrily stated something like, "Get your shit and get out of my office."  (*Id.*)  Dr. Clyde testified that he was angry and terminated Plaintiff because "[s]he was lying and stealing" hours, while Plaintiff asserts that she was terminated because of her pregnancy.  (*Id.*; Pl.'s Dep. pp. 59-60.)

Plaintiff filed this action on June 25, 2013.  (ECF No. 1.)  Defendant's Motion was filed on April 10, 2014.  (ECF No. 27.)  Plaintiff filed a Response (ECF No. 35) and Defendant filed a Reply (ECF No. 36).

### III.  ANALYSIS

Plaintiff's Complaint brings a single claim for discrimination based on sex in violation of Title VII, alleging that Dr. Clyde both demoted her and terminated her employment because of her pregnancy.  (ECF No. 1 at 4.)  Dr. Clyde moves for summary judgment as to both theories of Plaintiff's discrimination claim.  (ECF No. 27.)

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).

Discrimination based on pregnancy falls within Title VII's definition of discrimination based on sex. *Id.* § 2000e(k). "A plaintiff who seeks to prove that an employer discriminated against him or her can use either direct or circumstantial evidence." *Stone*, 210 F.3d at 1136 (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 620 (10th Cir. 1994)). "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (internal quotation omitted). Where no direct evidence of discrimination exists, a Plaintiff may prove discrimination by indirect or circumstantial evidence, in which case the claim is analyzed under the *McDonnell Douglas* burden-shifting test. *See Stone*, 210 F.3d at 1137 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

Here, Plaintiff argues that she has presented direct evidence of discrimination based on the following: Dr. Clyde's comments regarding a preference for women with "dead eggs" rather than "viable eggs"; his statement, "Don't you know what causes that shit?"; and his comments that Plaintiff could not supervise the optical department because she "had to go and get pregnant." (ECF No. 35 at 17-18.) However, the only one of these comments that could constitute direct evidence was Dr. Clyde's alleged statement that he was demoting Plaintiff from the supervisor position because she "had to go and get pregnant." The other statements, while indirectly indicative of potential discrimination, all require an inferential step to conclude that either of the adverse employment actions—demotion or termination—occurred because of Plaintiff's

pregnancy.[1]   *See Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1477 (10th

Cir. 1996) ("Statements which on their face are expressions of personal opinion [rather

than a policy that itself constitutes discrimination] . . . can only support an inference of

discrimination if the trier of fact finds the inference reasonable, and so constitute only

circumstantial or indirect evidence of discrimination against the plaintiff.").  Because

Plaintiff has presented direct evidence—her own testimony—on which a reasonable

jury could rely to find that Dr. Clyde demoted her because of her pregnancy, the Court

concludes that summary judgment is not appropriate as to Plaintiff's claim of

discriminatory demotion.  *See Stone*, 210 F.3d at 1136.  However, Plaintiff has

presented no direct evidence of discriminatory termination; therefore, the Court must

proceed to the *McDonnell Douglas* burden-shifting framework with respect to that

theory of Plaintiff's claim.

Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of

employment discrimination.  *Stone*, 210 F.3d at 1137.  A successfully established *prima

facie* case creates a presumption of discrimination, and the burden then shifts to

Defendant to rebut that presumption by asserting a facially legitimate, non-

discriminatory basis for its employment decisions.  *Id*.  If Defendant does so, the burden

shifts back to Plaintiff to offer evidence that sex was a determinative factor in the

---

[1] Plaintiff argues that Dr. Clyde's statements that he only wanted to hire employees who were older women with "dead eggs" instead of "viable eggs" constitute direct evidence of discriminatory termination.  (ECF No. 35 at 17.)  While these statements could be direct evidence of a claim for discriminatory failure to hire, they require an inferential step to support the claim that Plaintiff was discriminatorily terminated because of her "viable eggs", which is the relevant allegation here.  Accordingly, these comments are not direct evidence of discrimination.

employment decision or that Defendant's non-discriminatory reason was merely pretext. *Id.*

To establish a *prima facie* case of sex discrimination resulting in termination, Plaintiff must show that "(1) [s]he belongs to a protected class; (2) [s]he was qualified for h[er] job; (3) despite h[er] qualifications, [s]he was discharged; and (4) the job was not eliminated after h[er] discharge." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000). The elements of Plaintiff's *prima facie* case are not in dispute in the instant Motion. As a female employee who was undisputedly pregnant at the relevant time, Plaintiff is a member of a protected class. Although Dr. Clyde challenges Plaintiff's qualifications with respect to the alleged promotion, he does not dispute that Plaintiff was qualified for the optician position from which she was terminated, nor does Dr. Clyde argue that Plaintiff's termination was a layoff or that her position was otherwise eliminated. In fact, the Motion fails to raise any argument as to Plaintiff's *prima facie* burden at all, stating instead that "[e]ven assuming [P]laintiff presents a *prima facie* case of discrimination," Plaintiff has failed to prove that Dr. Clyde's non-discriminatory reasons were pretext. (ECF No. 27 at 6.) Therefore, the Court finds that Plaintiff has satisfied her initial burden to present a *prima facie* case of discriminatory termination. *See Kendrick*, 220 F.3d at 1227.

Next, the burden shifts to Defendant to come forward with a legitimate, non-discriminatory basis for Plaintiff's termination. Dr. Clyde has testified that Plaintiff was terminated for using an office computer for personal use while falsely claiming to be clocked out for lunch at the time, and for stating that she had worked three hours

8

beyond the time that she actually left.  (ECF No. 36 at 6-7; *see also* Clyde Dep. pp. 93-96.)  The Court finds that these explanations are legitimate, non-discriminatory bases for Plaintiff's termination.

Accordingly, the burden shifts back to Plaintiff to show that the proffered bases are a pretext for discrimination.  *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).  In order to establish a genuine issue of material fact as to pretext, a plaintiff must produce evidence that would allow a reasonable juror to find that the defendant's non-discriminatory reason is "unworthy of belief."  *Id.*; *see also Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (a plaintiff may meet her pretext burden by presenting "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.") (quotation omitted).  In determining whether a plaintiff has shown pretext, the Court must consider the plaintiff's evidence in its totality.  *Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008).

In this case, Plaintiff argues that the bases proffered for her termination were pretextual because Dr. Clyde's comments disparaging her pregnancy demonstrate his discriminatory intent, and because Dr. Clyde never spoke to her about her alleged repeated failure to clock out until she was terminated.  (ECF No. 35 at 20-21.)  Dr. Clyde contends that Plaintiff has invented the alleged comments by Dr. Clyde, and "if the remark [about viable eggs] was made at all, it is only a stray remark."  (ECF No. 27 at 7-8.)

9

Dr. Clyde's argument that Plaintiff is being untruthful is irrelevant on summary judgment, as the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). As for Dr. Clyde's contention that he never made the alleged disparaging comments—namely, that he wanted women employees with "dead eggs" instead of "viable eggs", said that unfortunately Plaintiff "had to go and get pregnant", and asked Plaintiff, "Don't you know what causes that shit?"—the Court finds that there is a dispute of material fact as to whether these comments were made. Plaintiff has testified that Dr. Clyde made these comments, Mark Winn has corroborated the "viable eggs" comment, and even Dr. Clyde stated in his deposition that, with regard to whether he made comments about "viable eggs", "I think I did because I've been told I did."[2] (Clyde Dep. p. 90:20.) Viewing this evidence in the light most favorable to the Plaintiff, the Court concludes that a reasonable jury could find such testimony credible.

As for Dr. Clyde's argument that such stray comments do not establish pretext, the Court finds that the alleged comments in question were more than mere "stray remarks". *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998). In *McKnight*, an age discrimination case, the Tenth Circuit cited a prior holding that "'age-related comments by non-decision makers'" were "'stray remarks' which are

---

[2] Defendant's Reply states repeatedly that "Plaintiff apparently believes if she bandies about the statement about viable eggs enough times it will become believable." (ECF No. 36 at 5; *see also id.* at 6, 7.) Defendant goes so far as to respond to Plaintiff's quotation from a witness who referred to the "viable eggs" comment as "stupid" by stating, "The continual mention of viable eggs by plaintiff in this action is what is stupid." (*Id.* at 5.) Defendant's counsel's accusatory tone is egregiously unprofessional, and the Court finds it particularly inappropriate here, as Dr. Clyde does not deny making the remarks at issue.

insufficient to establish pretext." *Id.* (quoting *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994)).  The *McKnight* Court held that, for the plaintiff to meet her burden of showing pretext, she was required to show that the comments "were made by a decision maker, and that there was a nexus between the discriminatory statements and the decision to terminate."  *Id.*; *see also Stone*, 210 F.3d at 1140 ("Age-related comments referring directly to the plaintiff can support an inference of age discrimination, but isolated or ambiguous comments may be, as here, too abstract to support such an inference.") (internal quotation marks omitted).

Here, the alleged discriminatory comments were made by the ultimate decision maker in Plaintiff's termination, Dr. Clyde, in direct reference to Plaintiff's pregnancy. Further, Plaintiff's pregnancy was disclosed in late June or early July of 2012, when some of the comments were made; other such comments were made on and around August 8, 2012, and Plaintiff was terminated on August 28, 2012.  The temporal proximity of these events is sufficient to show a nexus between the comments and the termination.  *Cf. Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (one and one-half month period between protected activity and adverse action may, by itself, establish causal nexus for purposes of *prima facie* case).  Accordingly, the Court concludes that the alleged discriminatory comments, while not direct evidence of discrimination, were not merely "stray remarks".  *See Tomsic*, 85 F.3d at 1479 (explicit gender-based comments to a plaintiff permit the inference that the plaintiff's supervisor had gender-based prejudices regarding her possibilities for success as an employee and terminated her at least in part because of her gender); *Stone*, 210 F.3d at 1140-41

(citing *Tomsic*).

Considering the evidence of the comments Dr. Clyde made to Plaintiff and to others about Plaintiff's pregnancy, combined with the evidence that Plaintiff was never informed or warned about the allegedly frequent problems with her failing to clock out or falsely reporting her work hours, the Court finds that a jury could make a reasonable inference of discrimination and find Dr. Clyde's purported non-discriminatory reasons "unworthy of belief." *Randle*, 69 F.3d at 451. Therefore, the evidence of pretext is sufficient to defeat summary judgment. *See Tomsic*, 85 F.3d at 1479 ("A jury may infer discriminatory animus from the simple showing of pretext, and it may find illegal discrimination upon a prima facie case and pretext.") (internal quotation marks omitted).

Accordingly, Defendant's Motion is denied as to Plaintiff's claim for discriminatory termination.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Defendant's Motion for Summary Judgment (ECF No. 27) is DENIED; and

2.    This matter remains set for a four-day jury trial to commence on April 6, 2015.

Dated this 10th day of October, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge

12