**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 13-cv-1672-WJM-KLM

ANDREA SMITH,

      Plaintiff,

v.

T.W. CLYDE, O.D., P.C., d/b/a PIKES PEAK EYE CARE,

      Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**
**AND DENYING DEFENDANT'S MOTION FOR NEW TRIAL**

---

      Plaintiff Andrea Smith ("Plaintiff") brought this action against her former employer, Tom W. Clyde, O.D., P.C., doing business as Pikes Peak Eye Care ("Defendant"), for sex discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*  (ECF No. 1.)  A jury trial commenced on April 6, 2015, and on April 9, 2015, the jury rendered a verdict in Plaintiff's favor, awarding her $500 in compensatory damages and $2,000 in punitive damages.  (ECF No. 76.)  Final judgment was entered on April 28, 2015.  (ECF No. 81.)  This matter is now before the Court on Plaintiff's Motion for Attorneys' Fees (ECF No. 82) and Defendant's Motion for New Trial (ECF No. 87).  For the reasons set forth below, Defendant's Motion is denied and Plaintiff's Motion is granted, although the requested fee award is reduced.

## I.  DEFENDANT'S MOTION FOR NEW TRIAL

      Defendant's Motion raises four issues that it argues merit a new trial:

(1) Defendant was not permitted to inform the jury that a verdict in favor of Plaintiff

would expose Defendant to a potential award of attorneys' fees; (2) evidence of

Plaintiff's criminal convictions was improperly excluded; (3) Defendant's request for a

Rule 35 mental examination was improperly denied; and (4) Defendant's Rule 50(a)

motion as to punitive damages was improperly denied.[1]  (ECF No. 87.)  The Court will

address each issue in turn.

## A.     Possible Attorneys' Fees Award

Defendant argues that the Court erred by ruling that Defendant would not be

permitted to inform the jury that Defendant could be obligated to pay Plaintiff's

attorneys' fees if Plaintiff prevailed on her claim.  (ECF No. 87 at 1–2.)  Defendant's

argument refers to counsel's cross-examination of Plaintiff on the first day of trial, when

the following exchange occurred:

> [Defendant's counsel]:  If they award you any amount at all
> then your attorneys will ask for attorney fees, correct?
> [Plaintiff's counsel]:  Sorry, your Honor, objection.
> [The Court]:  Sustained.  Next question.

Neither Plaintiff nor the Court articulated the basis for the objection or the ruling at the

time.  However, Defendant's Motion makes no legal argument as to why this ruling was

error, and cites no authority whatsoever.  Instead, Defendant simply argues that the

jury's decision was made without knowing "the full consequences of its verdict" and thus

it "deliberate[d] in the dark."  (*Id.* at 3.)

---

[1] Defendant's Motion raises an additional issue as to any award of attorneys' fees to
Plaintiff, requesting leave for reconsideration of the Court's decision in that respect.  (ECF No.
87 at 5.)  As the Court's present ruling on Plaintiff's Motion for Attorneys' Fees, *infra*, was not
yet issued when Defendant's Motion was filed, Defendant understandably fails to present any
argument on attorneys' fees, and the Court therefore denies Defendant's Motion as to this
issue.

The Court now holds that its ruling was proper pursuant to Federal Rule of Evidence 403.  While the question of Defendant's liability for attorneys' fees was arguably relevant to the jury's determination of damages, whether fees would be awarded remained an issue for the Court to determine.  The probative value of raising this issue was substantially outweighed by the danger of unfair prejudice if the jury were to consider an award of fees to Plaintiff's attorney in determining how much damage Plaintiff herself suffered, as well as the risk of confusing the issues by raising collateral matters to the jury question of whether intentional discrimination had occurred. Accordingly, exclusion was proper under Rule 403.

Furthermore, the Court wholly rejects Defendant's argument suggesting that the jury might have found in Plaintiff's favor despite not truly believing that Defendant committed unlawful discrimination, because "[a] jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 226 (2000).  The Court must therefore presume that the jury found in favor of Plaintiff on her discrimination claim because it concluded that Plaintiff had proven, by a preponderance of the evidence, that her pregnancy was a motivating factor in Defendant's decision to demote or terminate her. (*See* ECF No. 73 at 17.)  The jury's understanding of the totality of Defendant's monetary liability was not an element in the jury's determination of liability, and could only have affected the amount of the damages award.

The Court concludes that Defendant has not shown that it merits a new trial based on the exclusion of any reference to Defendant's exposure to an attorneys' fees award, and Defendant's Motion is denied in that respect.

3

B.    **Plaintiff's Prior Convictions**

Defendant next challenges the Court's ruling on its Motion *in Limine* as to

Plaintiff's prior convictions for criminal impersonation and theft, which occurred

approximately 12 years prior to trial.  (ECF No. 87 at 3.)  In the Court's Order Denying

Defendant's Motion *in Limine*, the Court cited Federal Rule of Evidence 609(b) in

holding as follows:

> As for Plaintiff's convictions for criminal impersonation and theft, the Court has considered the arguments of the parties and finds that, while it is a close question, these factors ultimately weigh against allowing admission of this evidence. The Court agrees with Defendant that Plaintiff's credibility is central to the issues in this case, as Defendant contends that his reason for terminating her was due to her dishonesty and "theft" of pay for hours she allegedly did not work, and that Plaintiff's testimony is important to the case.  (*See* ECF No. 48 at 2.)  Thus, the Court finds that these convictions have significant impeachment value, the importance of the testimony is great, and credibility is a central issue.

> However, the Court also recognizes that that one of the purposes of Rule 609(b) is to recognize an individual's ability to rehabilitate herself.  *See Mitchell v. Sun Drilling Prods.*, 1996 WL 411613, *2 (E.D. La. July 22, 1996).  With respect to a conviction more than ten years old, the general rule is one of inadmissibility.  *United States v. Caldwell*, 760 F.3d 267, 286 (3d Cir. 2014) (Rule 609(b) balancing test creates "predisposition toward exclusion"); *United States v. Cathey*, 591 F.2d 268, 275 (5th Cir. 1979) (citing Fed. R. Evid. 609(b) advisory committee's note ("It is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances.")). . . .  Furthermore, because dishonesty is a common thread between the challenged convictions and Defendant's allegations of Plaintiff's workplace misconduct, the risk of severe prejudice is proportionately greater.  *See Caldwell*, 760 F.3d at 286–87 ("With respect to the similarity of the crime to the offense charged, the balance tilts further toward exclusion as the offered impeachment evidence becomes more similar

4

to the crime for which the defendant is being tried. . . .  The generally accepted view, therefore, is that evidence of similar offenses for impeachment purposes under Rule 609 should be admitted sparingly if at all.") (internal quotation marks omitted).

In considering all the factors, the Court finds that while Defendant has established that Plaintiff's convictions for impersonation and theft have probative value, he has not shown that such value substantially outweighs the seriously prejudicial effect of this evidence.  Fed. R. Evid. 609(b).  Therefore, the Court concludes that this is not one of the exceptional cases in which a conviction more than ten years old is admissible, and the Court grants Plaintiff's Motion and denies Defendant's Motion with respect to the evidence of Plaintiff's 2003 convictions.

(ECF No. 59 at 5–6.)

Defendant now argues, again without any citation to authority, that "this close question should have been resolved in favor of Defendant rather than the Plaintiff." (ECF No. 87 at 3.)  Defendant's argument ignores the case law cited above in the ruling on the Motion *in Limine* which establishes that evidence of a conviction more than ten years old is presumptively excluded.  Rule 609(b) requires the probative value of such evidence to "substantially outweigh[] its prejudicial effect," and as the Court has already held, that standard was not met here.  Defendant's current Motion provides nothing to alter that holding.

The Court concludes that its ruling on Defendant's Motion *in Limine* was correct, for the same reasons articulated therein.  (*See* ECF No. 59 at 5–6.)  Defendant has therefore failed to show that it merits a new trial on this basis.

## C.    Rule 35 Mental Examination

At the Final Pretrial Conference before U.S. Magistrate Judge Kristen L. Mix, Defendant made an oral motion for a Federal Rule of Civil Procedure 35 mental

examination based on Plaintiff's production in discovery of a list of prescription medications she was taking at the relevant time.  (*See* ECF No. 38.)  The Magistrate Judge held a Telephonic Discovery Hearing on July 29, 2014, in which she ruled on Defendant's oral motion.  (ECF No. 43.)  After an extensive discussion with counsel, the Magistrate Judge denied the motion on the basis that Rule 35 mental examinations are permitted only in specified circumstances, and none of those circumstances were present in the instant case.  (*Id.* at 21–24.)

Defendant now moves for a new trial based on the failure to grant a Rule 35 mental examination, arguing that such examination would have permitted Defendant to introduce evidence that would have been probative of Defendant's non-discriminatory reasons for terminating Plaintiff.  (ECF No. 87 at 4.)  However, Defendant does not articulate any error in the Magistrate Judge's analysis, nor does Defendant cite any authority at all.  Furthermore, Defendant filed no objection to the Magistrate Judge's decision under Federal Rule of Civil Procedure 72(a), and its challenge now is therefore untimely.  Regardless, the Court has reviewed the Magistrate Judge's thorough decision and concludes that she correctly decided the Rule 35 issue.  Accordingly, this argument provides no basis for a new trial.

Defendant also challenges the Court's decision on its Motion *in Limine* seeking to permit it to cross-examine Plaintiff about the list of medications she took both before and after her termination.  (ECF No. 49 at 6–7.)  As to that issue, the Court held as follows:

> [Plaintiff] has indicated that she will not introduce her list of prescription medications, nor will she introduce her use of such medications in support of her claim for emotional

6

distress damages. (ECF No. 51 at 3.) The Court cannot make a preliminary ruling as to whether this evidence is admissible on cross-examination when the witness has not yet testified on direct examination. Accordingly, the Court denies Defendant's Motion as to the evidence of Plaintiff's medications, without prejudice to reasserting this argument at trial should it become appropriate.

(ECF No. 59 at 11–12.) Defendant states conclusorily that "[d]isclosure would have resulted in a different jury verdict," but makes no argument in support, cites no authority, and does not explain how the Court's preliminary ruling *in limine* requires a new trial when it explicitly permitted Defendant to reassert the argument at trial. Defendant's Motion is therefore denied on this basis.

**D.    Punitive Damages**

Defendant argues that the Court should have granted its Federal Rule of Civil Procedure 50(a) Motion as to punitive damages. (ECF No. 87 at 4–5.) The Court ruled on Defendant's Rule 50(a) Motion at the close of the evidence on the second day of trial. (ECF No. 68.) The Court found that, given that the standard for punitive damages requires a plaintiff to show that the defendant discriminated "with malice or reckless indifference to [her] federally protected rights," 42 U.S.C. § 1981a(b)(1), Plaintiff had presented sufficient evidence to submit the issue to the jury. (*Id.*) The Court relied on the evidence of Dr. Clyde's negative attitude toward pregnancy as displayed in his comments to Plaintiff and others, as well as Defendant's awareness of the unlawfulness of pregnancy discrimination expressed in its explicit anti-discrimination policy, holding that this evidence established a legally sufficient basis for a reasonable jury to find Plaintiff was entitled to punitive damages.

Defendant now reargues its Rule 50(a) Motion, contending that the punitive

7

damages standard was not met.  However, Defendant does not take issue with any part of the Court's analysis or cite any authority suggesting that the evidence on which the Court relied was insufficient.  The Court therefore declines to reconsider its ruling on the Rule 50(a) Motion, and finds that Defendant has failed to show that it is entitled to a new trial.

## II.  PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

In a Title VII case, "a prevailing plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances."  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978) (emphasis omitted); 42 U.S.C. § 2000e-5(k).  Nevertheless, a prevailing party seeking an award of attorneys' fees must demonstrate that the fees it seeks are reasonable.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Counsel must exercise "billing judgment" and make a good faith effort to exclude hours or costs that are "excessive, redundant or otherwise unnecessary."  *Id.* at 434.

Generally, the starting point for any calculation of a reasonable attorneys' fee is the "lodestar," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate.  *Id.* at 433; *Malloy v. Monahan*, 73 F.3d 1012, 1017–18 (10th Cir. 1996).  To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment.  *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).  As for the hourly rate, the Tenth Circuit has indicated that "the court must look to 'what the evidence shows the market commands for civil rights or analogous litigation.'"  *Burch v. La Petite Academy, Inc.*, 10 F. App'x 753, 755 (10th Cir. 2001) (quoting *Case*, 157 F.3d at 1255).  The "local

8

market rate" is usually defined by the state or city in which the case is litigated.  *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998) (looking at "the prevailing market rates in the relevant community"); *Case*, 157 F.3d at 1256 (looking at fees charged by lawyers in the area in which the litigation occurs).  The burden is on the party seeking fees to provide evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community.  *Ellis*, 163 F.3d at 1203.

Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed.  *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997).  The Tenth Circuit has adopted a three-part test of the "relevant indicia of success" to determine the reasonableness of a fee award to a prevailing party: "(1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation."  *Id.*

The parties here agree that the jury verdict in Plaintiff's favor makes her the prevailing party, which generally entitles her to an award of reasonable attorneys' fees. (*See* ECF No. 82 at 1–2; ECF No. 88 at 1–3.)  The Court has also considered the parties' arguments with respect to Plaintiff's attorneys' hourly rates, and finds the rates appropriate for the type of case and the local market.  The affidavits provided by Plaintiff as well as the undersigned's personal experience with Title VII employment discrimination cases in the Denver area support this finding.  The Court rejects Defendant's suggestion that rates in the Colorado Springs area are significantly lower,

as the Tenth Circuit has advised courts to apply the fee rates of the area where the case is litigated regardless of the attorneys' geographic provenance. *See Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).

Defendant contends that Plaintiff should not receive any fee award because she obtained a "*de minimis*" recovery, citing case law permitting courts to reject requests for fee awards from plaintiffs who seek compensatory damages but are awarded only nominal damages. (ECF No. 88 at 2 (citing *Farrar v. Hobby*, 506 U.S. 103, 115 (1992)).) While Plaintiff's recovery was arguably small in absolute terms, the jury's verdict awarded her both compensatory and punitive damages, not merely nominal damages. (*See* ECF No. 76.) Accordingly, the Court rejects Defendant's argument that Plaintiff's recovery was *de minimis* and that therefore no fees should be awarded.

Nevertheless, the Court must evaluate the relative degree of success Plaintiff obtained as the first factor in considering the reasonableness of her fee request. *See Phelps*, 120 F.3d at 1132. This is the "most critical factor" in the analysis, and yet "[t]here is no precise rule or formula for making these determinations." *Hensley*, 461 U.S. at 436. The *Hensley* Court proposed that, for example, had the plaintiffs prevailed on only one of their six claims, a fee award based on the total hours worked on all six claims "clearly would have been excessive." *Id.* Ultimately, "the district court has discretion in determining the amount of a fee award." *Id.*

In the instant case, Plaintiff brought a single claim under Title VII for discrimination based on pregnancy, alleging that Defendant took two adverse employment actions—demotion and termination—in which her pregnancy was a

motivating factor. (ECF No. 1 at 4.) Plaintiff sought backpay, compensatory damages, and punitive damages. (*Id.* at 5.) At the conclusion of the trial, the jury found that Defendant had unlawfully discriminated, and awarded Plaintiff no backpay, $500 in compensatory damages, and $2,000 in punitive damages. (ECF No. 76.) The Verdict Form did not distinguish between the demotion and termination bases of the claim. (*Id.*)

Defendant raises numerous specious arguments in contending that Plaintiff's degree of success should be viewed as minimal. For example, Defendant argues that Plaintiff's recovery of $500 in compensatory damages should be viewed as obtaining 1% of the total recovery sought because, even though Plaintiff did not specify any amount, damages against Defendant as a small employer are capped at $50,000. (ECF No. 88 at 3.) Defendant also states repeatedly that Plaintiff's suit was "all about attorney fees," and irrelevantly argues that Plaintiff's counsel unreasonably emphasized Dr. Clyde's statements about viable eggs to suggest that "these statements were common in the workplace when they were not." (*Id.* at 4–5.) Most egregiously, Defendant attempts to reargue the merits of the case, contending that Plaintiff lacked credibility because her assertion that she was promoted and then demoted was a "factitious story," ultimately "fail[ing] to prove she was ever promoted or demoted," and even going so far as to claim that the jury only found that Defendant discriminated "because it wanted to send the message to Plaintiff that she was not credible and to send the message to Defendant that Dr. Clyde's statements about viable eggs were offensive." (*Id.* at 3–5.)

The Court finds many of these arguments completely unprofessional and

inappropriate, not to mention largely irrelevant to the issue at hand.  The majority of them merit no discussion, as they do not affect an evaluation of "the difference between the judgment recovered and the recovery sought."  *Phelps*, 120 F.3d at 1131.  As to the others, the Court rejects Defendant's suggestion that Plaintiff's actual recovery should be compared to the statutory maximum in determining the amount sought merely because Plaintiff never provided a requested number to the jury; Defendant fails to cite any evidence or argument indicating that Plaintiff ever sought a compensatory damages award as high as $50,000.  The Court also easily rejects Defendant's argument that Plaintiff necessarily failed on her demotion theory of discrimination, as the jury did not distinguish between Plaintiff's alleged demotion and termination in its verdict, nor did it express any explicit opinion of her credibility.  Instead, the jury awarded $2,000 in punitive damages, which the Court instructed the jury to award only if it found that Defendant discriminated "with malice or with reckless indifference," and in order to "punish a wrongdoer for misconduct, and also to provide a warning to others."  (ECF No. 73 at 24.)  The Court must presume that the jury followed its instructions, rather than finding discrimination merely to permit it to send messages to the parties through damage awards.  *See Weeks*, 528 U.S. at 226.  Defendant's arguments otherwise are contrary to established case law.

However, as Plaintiff admits, she did not succeed in obtaining any backpay award, most likely because she mitigated those damages by obtaining another job at similar pay shortly after her termination.  (ECF No. 90 at 3.)  Plaintiff argues that this successful mitigation "should not be held against her," but does not explain why counsel nevertheless persisted in seeking a backpay award for Plaintiff at trial.  Furthermore,

based on the evidence and argument presented at trial, the Court believes that Plaintiff sought significantly more than $500 in compensatory damages.  Accordingly, the Court finds that Plaintiff's degree of success, while substantial, was not complete because she sought, but failed to obtain, backpay and a larger compensatory damages award. Thus, this factor weighs in favor of a reduced  attorneys' fee award commensurate with the degree of success obtained.

The second factor of the analysis regarding the significance of the legal issue "goes beyond the actual relief awarded to examine the extent to which the plaintiffs succeeded on their theory of liability."  *Phelps*, 120 F.3d at 1132.  Defendant states that "this factor may weigh in favor of Plaintiff as she succeeded in obtaining damages for two of her three requests" (ECF No. 88 at 6), presumably referring to compensatory and punitive damages, but ignoring *Phelps*'s admonition that this evaluation go beyond the actual relief awarded and consider the legal theory at issue.  Ultimately, the jury verdict vindicated Plaintiff's theory in her sole legal claim that Defendant's actions constituted unlawful discrimination on the basis of pregnancy.  Thus, this factor supports a substantial award of fees.

The third factor of the analysis examines whether the judgment "vindicates important rights and deters future lawless conduct as opposed to merely occupying the time and energy of counsel, court, and client."  *Phelps*, 120 F.3d at 1132 (internal quotation marks omitted) (finding public interest factor satisfied where plaintiffs obtained declaratory judgment invalidating a state statute under First Amendment).  The Supreme Court has stated that Title VII's protections, like those of the Civil Rights Act in general, permit a plaintiff to act "as a 'private attorney general,' vindicating a policy that

13

Congress considered of the highest priority." *Newman v. Piggie Park Enters., Inc.*, 390

U.S. 400, 402 (1968) (regarding Title II); *see also Hensley*, 461 U.S. at 436 (quoting the

same citation from *Newman* in reference to Title VII).  The Court therefore concludes

that the jury's verdict here, squarely within the scope of Title VII, vindicated important

rights within the meaning of *Phelps*.

Defendant contests whether the judgment in this case deterred future lawless

conduct, arguing that the changes made to the management of Defendant's business

would have happened anyway and were not a result of the instant case.  (ECF No. 88

at 6–7.)  However, even taking Defendant's assertions as true, Plaintiff's success deters

other business owners and employers from engaging in similar discriminatory conduct.

The third factor therefore weighs in favor of a substantial fee award.

Considering all three factors, the Court finds that the second and third factors

support a fee award, but that the lodestar should be adjusted slightly downward to

reach a reasonable fee based on the reduced degree of success obtained.  However,

the Court must also consider the billing entries Defendant challenges to determine

whether the lodestar was correctly calculated.  (*See* ECF No. 88 at 8–11.)  While most

of Defendant's challenges fail to show that the billing entries were unnecessary, the

Court agrees with Defendant's challenge to Plaintiff's motion for summary judgment as

to Defendant's counterclaim because Defendant states that the motion was prematurely

filed even though "counsel indicated a willingness to dismiss by [the] time of the final

pretrial conference if no new evidence was obtained."  (*Id.* at 9.)  Plaintiff does not

contest Defendant's characterization of these events in her Reply.  (ECF No. 90.)  The

motion at issue was ultimately denied as moot when the counterclaim was withdrawn.[2] (ECF No. 34.)  The Court therefore finds that the hours for preparing and filing the motion for summary judgment on the counterclaim were improperly billed.  Plaintiff's limited exercise of billing judgment, which reduced the lodestar from $122,410 to $117,910, does not account for these hours.  (*See* ECF No. 82 at 8.)

Defendant raises a final issue in the conclusion of its Response, arguing that its past settlement offers should operate as offers of judgment that should cut off any fee award above the offered amounts.  (ECF No. 88 at 13.)  However, these offers were not made pursuant to Federal Rule of Civil Procedure 68 so as to have the proposed effect, and Defendant cites no authority for treating its settlement offers as such.  Accordingly, the Court rejects this argument, finding that these settlement offers were subject to negotiation and do not cut off a fee award.

Considering all the abovementioned factors, the Court finds it appropriate to adjust Plaintiff's proposed lodestar downward by 20% to account for the degree of success achieved and the improperly billed hours discussed above.  Multiplying $117,910 by 80% results in a fee award of $94,328, which the Court deems a reasonable attorneys' fee in this case.

---

[2] Defendant also argues that the Court's Order permitting it to withdraw the counterclaim found that "the parties have exerted no substantial effort or expense in preparing for trial," and that therefore no fees should be awarded for work done before the date of the Order.  (ECF No. 88 at 4.)  This argument mischaracterizes the Court's Order, which was intended only to indicate that the case was not close enough to trial to prevent the dismissal of a claim, not that the attorneys had not yet spent any time litigating the case.  The Court therefore rejects this argument for reducing the lodestar.

### III.  CONCLUSION

In accordance with the foregoing, the Court ORDERS as follows:

1.      Plaintiff's Motion for Attorneys' Fees (ECF No. 82) is GRANTED and fees are

awarded in the amount of $94,328; and

2.      Defendant's Motion for New Trial (ECF No. 87) is DENIED.


Dated this 3rd day of December, 2015.

BY THE COURT:

_____
William J. Martinez
United States District Judge
